| | |
|---|---|
| 1 | |
| 2 | |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE GROULEY, | CASE NO. CV-F-05-0537 OWW LJO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 16) |
| vs. | |
| JO ANNE BARNART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Bruce Gourley ("claimant") seeks judicial review of an administrative decision denying his claim for Supplemental Security Income under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed his complaint on April 15, 2005 and his opening brief on February 21, 2006. The Commissioner filed her opposition to the appeal on March 21, 2006. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Supplemental Security Income benefits under the Social Security Act on August 9, 2001. (Administrative Record "AR" 108-110.) He alleges a disability onset of September 20, 2000 due to Hepatitis C, cartilage in his hands contracting, and physical and mental impairments. (AR 114.) Claimant's applications for benefits were denied and denied upon

reconsideration. Claimant's application was further denied by an Administrative Law Judge ("ALJ") in two decisions issued on November 24, 2003. (AR 20-27.) The Appeals Council denied review on November 8, 2004. (AR 9-11.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Work Experience

Claimant was born on July 15, 1961. (AR 108.) His past relevant work is as an assistant fast food manager and as a cook. (AR 45.) He completed the tenth grade of high school. (AR 120.)

### Medical History

The pertinent medical history is summarized as follows.

On July 17, 2001, claimant was admitted into Doctors' Medical Center for surgery with Robert Caton, M.D. for a surgical release of the Dupuytren's contracture of the right hand. (AR 172.) The remainder of the pre-op physical examination was normal. (AR 173.) Following the outpatient procedure, claimant was stable. (AR 171.) On October 24, 2001, Dr. Caton reviewed claimant's right hand following surgery and found the wound "looks good" and that it was healing nicely. (AR 309.)

State agency physician Lon Gottschalk, M.D. completed a Mental Residual Functional Capacity Assessment form September 18, 2001. (AR 177-179.) Dr. Gottschalk found claimant not significantly limited in understanding and memory, sustained concentration and persistence, social interaction or adaption. (AR 177-178.) Dr. Gottschalk functionally assessed claimant as mentally able to carry out some moderately complex instructions, respond appropriately to supervision/co-workers and the public and adapt reasonably to change in work routine. (AR 179.) Dr. Gottschalk found that claimant's depression to be in reasonable partial remission. (AR 193.)

On October 3, 2001, claimant was examined by Lakshmi Neena Madireddi, M.D., orthopaedist. (AR 196-197.) Claimant reported that he can lift and carry 10 pounds with his left hand and none with his right, has difficulty in grasping and gripping. (AR 196.) Following examination, Dr. Madireddi functionally assessed claimant with no restricions in standing, walking or sitting. (AR 197.) He could lift and carry 10 pounds frequently and 20 occasionally; avoid repetitive grasping, gripping, pinching and repetitive handling activities with his hands; no restricions in fingering with both hands or in reaching, pushing or pulling. (AR 197.)

Another state agency physician completed a Physical Residual Functional Capacity Assessment form on October 26, 2001. (AR 198-205.) Claimant was assessed as able to lift 20 pounds occasionally, 10 pounds frequently, sit, stand, walk 6 hours; and postural limitations were assessed at occasionally. (AR 199-200.) The state agency physician assessed manipulative restrictions for fingering and handling to frequently. (AR 201.)

In November 2001, claimant had similar hand surgery on his left hand. (AR 225.) On January 22, 2002, claimant was admitted for an infection in his left hand following the surgery for Dupuytren's contracture and chest pains. (AR 207.) He was treated and chest X-rays were normal. (AR 207-220.) He made progressive and satisfactory improvement. (AR 223.) Further procedures on his left hand were performed for the infection. (AR 250-251, 260, 279.)

An MRI of the right knee and left knee on July 17, 2000 showed both knees were normal. (AR 334.)

On April 30, 2001, state agency physician Susan Regan, M.D. completed a Psychiatric Review Technique form. (AR 346-350.) She assessed claimant with an affective disorder and anxiety related disorder. She assessed him with mild restricions of activities of daily living and in maintaining social functioning but with insufficient evidence to assess difficulties in maintaining concentration, persistence or pace or episodes of decompensation. (AR 356.)

Another State Agency physician completed a Physical Residual Functional Capacity Assessment form on April 30, 2002. (Ar 360-367.) Claimant was assessed with the ability to lift 20 pounds occasionally and 10 pounds frequently, stand/sit/ walk 6 hours out of eight; limited from frequent balancing and occasionally limited in all other postural limitations. (AR 361-362.) Claimant was further limited to occasional gross manipulation and limited in fine fingering. (AR 363.)

On July 29, 2002, Harrison Wright, M.D. completed a form in which he said he treated claimant from May 31, 2001 to June 5, 2002. (AR 382-387.) Dr. Wright stated claimant has Hepatitis C, migraine headaches, and Dupuytren's contractures. (AR 382.) Dr. Wright found that lifting and carrying are affected by the impairments and that claimant can lift/carry up to 10 pounds occasionally. (AR 383.) He assessed that claimant can sit/stand/walk 4 hours in an 8 hour workday, and at one time without interruption, can sit for 6 hours, and stand/walk for 2 hours, which was based on claimant's

stated activity level. (AR 384.)

On July 29, 2002, Dr. Caton noted claimant's complaints of problems with his knees. (AR 396). A September 2002 MRI scan revealed torn meniscuses and possible ligament tears in both knees. (AR 393, 394-95.) Dr. Caton performed right knee surgery on November 19, 2002 (AR 388-89), and left knee surgery on March 4, 2003. (AR 403-04.) On March 17, 2003, Dr. Caton reported that claimant was "doing well." (AR 406). Claimant's right shoulder, for which claimant underwent a Mumford procedure, was doing well on April 14, 2003. (AR 410.)

### Hearing Testimony

At the first hearing, claimant testified he had a surgery on each hand, had infections, which cleared up, but still has pain. (AR 34.) He described the pain as constant. He cannot grasp with his left hand, and his right hand is a bit better. (AR 34.) He can hold a pen, and write two sentences, then has to put it down. (AR 34.) He has pain in his right shoulder, and both knees. (AR 35.) His knees hurt to walk, and he can only walk a block or two. (AR 37.) He has to lay down two to three times a day for 15-30 minutes each. (AR 38.) He can stand for 5-30 minutes. (AR 39.) He uses a cane. He takes antidepressants because the Hepatitis C makes him sad. (AR 42.) He also has urinary disfunction. (AR 43.) He was in prison for 2 years, from 1998-2000. (AR 47.)

Vocational expert ("VE") David Dettmer testified. (AR 44.) Claimant's past relevant work was described as an assistant manager of a fast food restaurant and as a cook. (AR 45.) A cook is medium exertion and an assistant manager is also medium. (AR 47-48.) The ALJ gave the hypothetical of no restriction on walking, standing or sitting, but lifting and carrying 10 pounds frequently and 20 occasionally, with occasional handling, grasping and gripping. The VE testified that claimant could perform the job of a parking lot attendant, office helper, sales attendant with about a 50-75% erosion of the occupational base. (AR 50-51.) In another hypothetical where claimant could lift and carry 20 pounds occasionally, 10 pounds frequently, stand, sit or walk 6 hours out of 8, with frequent handling and fingering, but not constant, the VE testified that in addition to the above jobs, claimant could perform as a photo counter clerk, a cashier, with the occupational base eroded by 50%. (AR 53.)

In another hypothetical, the ALJ gave a hypothetical that lifting 20 pounds occasionally and 10 frequently, stand, walk and sit 6 out of eight hours and limited to occasional pushing and pulling in the

upper extremities, occasional gross and fine manipulation, the VE testified the jobs are the same as in the first hypothetical. (AR 54.)

In another hypothetical, the ALJ stated claimant can stand four hours in 8, walk for 4 out of 8, in 2 hour intervals, occasional simple grasping bilaterally, no fine manipulation bilaterally, occasional reaching, handling, pushing and pulling. The VE testified the jobs are the same as in the first hypothetical.

The ALJ conducted a second hearing to obtain testimony of an orthopedic specialist. (AR 58.) The medical expert, Gwylum Lewis, M.D., stated that the operation in claimant's left hand resulted in an infection which gave claimant some impairment of function of his left hand. (AR 59.) X-rays of his knees in his June 2000 showed a tear of the interior cruciate ligament, cystic degeneration of the tibia plateau, and a tear of the vidia meniscus. (AR 60.) Orthopedic surgery removed the tears. Recovery from the hand surgery would typically take 5-6 months before there is maximum dexterity and use of the hand and fingers. (AR 62.) For the right knee cruciate ligament surgery, recovery is about one year. (AR 63.) Recovery for the surgery on the left knee is about the same. (AR 63.) The ME did not believe there was Listing level of impairment for Listing 1.02 or 1.03. (AR 65.) Arthritis in the shoulder where the joint meets the collar bone is the most minimal type of arthritis in the shoulder. (AR 66.) It would be reasonable, if not a little excessive, for claimant to be restricted between a 1/3 to 2/3 of the day from using his hands repetitively.

## ALJ Findings

In his November 24, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 20.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 26-27):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has an impairment or a combination of impairments considered severe based on the requirements in the Regulations 20 CFR §416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The ALJ finds the claimant' allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The ALJ has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. 20 CFR §416.927.

6. The claimant has the residual functional capacity for a narrow range of light work activity, as outlined in the body of the decision.

7. The claimant is unable to perform any of his past relevant work. 20 CFR §416.965.

8. The claimant is forty-two years old, which the Regulations define as a younger individual. 20 CFR §416.963.

9. The claimant has a limited education. 20 CFR §416.964.

10. The claimant has no transferable skills from any past relevant work. 20 CFR §416.968.

11. Although the claimant's nonexertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform, as outlined in the body of this decision.

12. The claimant was not under a disability as defined in the Social security Act, at any time through the date of this decision. 20 CFR §416.920(f)

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) failed to consider all of the medical evidence, (2) failed to properly consider claimant's subjective claims, (3) accepted erroneous vocational testimony, and (4) did not develop and consider claimant's mental impairment.

## **The Sequential Analysis**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;
2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;
3. If the claimant has a severe impairment, determination of whether any such severe

7

impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

**Consideration of the Medical Evidence**

Claimant argues that the ALJ failed to fully adopt Dr. Lewis' testimony, which supported some of the functional limitations mentioned by treating physician Dr. Wright. (Opening Brief p.5.)

From the Court's review of the hearing testimony, it is clear the ALJ employed Dr. Lewis to opine on the duration of claimant's hand and knee impairments. (AR 61-62.) Dr. Lewis opined that the hand surgeries would typically require a 5-6 month recovery period (AR 62), and the knee surgeries, one

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

year recovery period. (AR 63, 67.) Dr. Lewis did not functionally assess claimant.

Claimant argues "the ALJ did not include in the residual functional capacity the express limits the ME found present which were consistent with the treating doctor opinion, such as occasional reaching and feeling." (Opening Brief p.5.)

The ME testified that the restrictions on handling, pushing, pulling and reaching assessed by claimant's treating physician, were "a little excessive, but it's reasonable." (AR 67.) The ALJ was not bound to accept either the ME's assessment of reasonableness or the treating physician's limitations provided the ALJ sets forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence. *Rodriquez v. Bowen*, 876 F.2d 759, 762 (9th 1989).

The ALJ stated that he gave Dr. Wright's opinion controlling weight. (AR 24, 383.) The ALJ, in large part, adopted the residual functional capacity as assessed by Dr. Wright. The ALJ found that claimant had the residual functional capacity for a narrow range of light work:

> "He can sit for up to six hours a day, stand and walk for two hours at a time and for a total of four hours a day, and lift ten pounds frequently and twenty pounds occasionally. He can perform simple grasping occasionally but cannot perform fine manipulation with either hand. He can perform repetitive actions with his lower extremities and occasionally climb, reach, handle, push and pull, and frequently balance, stoop, crouch, kneel, and crawl, although he has moderate limitations on exposure to moving machinery, and moderate-to-marked limitations on exposure to noise, fumes and vibration." (AR 24-25.)

This residual functional capacity is nearly identical to the assessment by treating physician Dr. Wright.[5] (AR 383-386.) Claimant does not argue what specific error in the residual functional capacity the ALJ made.

As far as the Court can determine, claimant argues that there was error for "bypassing" the impairments of the shoulder, headaches, hepatitis C and hand contractures. (Opening Brief p. 6:2-8.) However, the ALJ considered the functional limitations of the impairments supported by the objective medical evidence.

Claimant argues that the ALJ misrepresented the record in saying the opinions of the consultative examiner and Dr. Wright are consistent. (Opening Brief p.6:18-19.)

---

[5] The ALJ did not adopt Dr. Wright's sitting limitation that claimant was limited to a total of 4 hours sitting, in 6 hours intervals - because this was internally inconsistent. (AR 384.) The Court finds no error.

9

Again, claimant does not argue what <u>specific</u> error in the residual functional capacity the ALJ made. Here, the ALJ adopted the <u>more</u> restrictive residual functional capacity assessment of Dr. Wright. The consultative examiner, Dr. Madireddi, assessed a <u>less</u> restrictive residual functional capacity. For instance, Dr. Madireddi found no restriction on standing/walking/sitting, on fingering and reaching, pushing or pulling. (AR 197.) Dr. Wright, and the ALJ, however, assessed restrictions on standing/walking/sitting, on fingering and on reaching, pushing or pulling. (Compare 24-25, 384 with 197.) The Court finds no error.

Claimant also argues that the ALJ "played doctor" by finding that the hands improved by mid 2002. (Opening Brief p.7.) To the contrary, the ALJ relied upon the medical expert's testimony to determine that the hand condition had at most a 6-month recovery period. The first surgery was in July 2001 and the infection from the second surgery was under control by early 2002. Accordingly, the ALJ's finding that claimant would have recovered from his surgeries in mid 2002 is supported by the medical evidence. (AR 61-62.)

### Consideration of Claimant's Testimony

Calimant argues that the ALJ failed to fully and fairly review his testimony.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard

unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148. An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions;

    (6)    Claimant's daily activities;

    (7)    Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

    (8)    Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

Here, the ALJ gave several reasons for rejecting claimant's testimony of disabling symptoms. First, the ALJ noted that claimant's alleged functional limitations were inconsistent with the opinions of various physicians, including treating physician Dr. Wright. (AR 22, 23-24.) While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ also discussed the scope of claimant's activities of daily living. The ALJ observed that claimant's reported activities were inconsistent with his allegedly disabling limitations. (AR 23.) The ALJ also noted that claimant alleged urinary problems which claimant had not mentioned to his physicians, (AR 23). Claimant was receiving conservative pain treatment. (AR 22.)

The ALJ also noted "the possibility of secondary gain" related to the alleged disability due to claimant's living arrangement. (AR 23.) Here, the ALJ considered claimant's medical records, reviewing and consulting records, and his testimony. "Credibility determinations are the province of the

1  ALJ." *Fair v. Bowen*, 885 F.2d at 604.  Thus, there is substantial evidence in the record to support the
2  ALJ's partial rejection of claimant's subjective complaints.

## Consideration of the VE's Testimony

4  At Step Five, it is the Commissioner's burden to establish that jobs exist in the national economy
5  that the plaintiff can perform. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); 20 C.F.R.
6  §404.1520(f).  The Commissioner may meet this burden in two different ways: (1) the testimony of a
7  vocational expert ("VE"), or (2) by reference to the Medical-Vocational Guidelines at 20 CFR Part 404,
8  subpart P.  *Osenbrock v. Apfel*, 240 F.3d at 1162.

9  Here, the ALJ employed a vocational expert to opine as to whether claimant could perform any
10 past relevant work and whether other available jobs exist in the national economy.  Vocational experts
11 may discuss more specific jobs than the general category of jobs found in the DOT. *Moncada v. Chater*,
12 60 F.3d 521, 524 (9th Cir. 1995); *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995) ("vocational
13 experts can testify whether particular applicants for disability benefits would be able to perform
14 subcategories of jobs within the DOT.").

15 Claimant argues that the ALJ did not include the "new RFC, with all amendments from the ME"
16 in the hypotheticals to the VE.  The claimant does not explain to what "new RFC" he refers.  However,
17 the ALJ posed several hypotheticals, including hypotheticals with the functional assessment of Dr.
18 Wright's. (AR 54.)  The VE testified as to specific jobs claimant could perform.  (AR 54.)

19 Claimant argues that the VE's testimony was confusing and unacceptable because the VE used
20 words as "probably," "think," and "guess."  (Opening Brief p.8.)

21 Vocational evidence is provided by a person who, through training and experience in vocational
22 counseling or placement, has an up-to-date knowledge of job requirements, occupational characteristics,
23 and working conditions, as well as a familiarity with the personal attributes and skills necessary to
24 function in various jobs.  *Wilson v. Califano*, 617 F.2d 1050 (4th Cir. 1980).  The VE's qualifications
25 were not challenged, nor was his testimony questioned on cross-examination.  (AR 44, 55.) The Court
26 does not infer any error in the VE's testimony.

27 Claimant argues that the VE was required to base his testimony on the Dictionary of
28 Occupational Titles. (Opening Brief p.8.)

The DOT is "the Secretary's primary source of reliable job information." *See Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990); *cf.*, 20 C.F.R. §404.1566(d)(1). One purpose of the DOT is to classify identified job titles by their exertional and skill requirements. *Terry*, 903 F.2d at 1276. The DOT, however, "is not the sole source of admissible information concerning jobs." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994). Introduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT. *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995). Although the Commissioner may depart from the job descriptions listed in the DOT, such a departure is permissible only if "the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d at 1435.

There is no evidence that contradicts the VE's testimony. *Johnson v. Shalala*, 60 F.3d at 1435-36 (Rote reliance on the Dictionary of Occupational Titles, even by the vocational expert herself, is inappropriate where the vocational expert's practical experience with the job market reveals a contrary classification.)

### **Develop and Consider Mental Evidence**

Claimant argues that with evidence of depression, the ALJ failed to develop the evidence of claimant's mental impairment. Claimant argues the ALJ should have referred claimant for a consultative examination. (Opening Brief p.8.)

A consultative examination will not be sought when issues of claimant's actual performance of substantial gainful activity have not been resolved or when the claimant does not meet all of the nondisability requirements. 20 C.F.R. § 416.919b. The regulations do not, however, require consultive evaluations of every alleged impairment. *See e.g., Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990) (credibility of plaintiff also a factor). It is incumbent to secure any additional evidence only as needed to make a sound determination. *Ferguson v. Schweiker*, 765 F.2d 31, 36-37, n.4 (3d Cir. 1985); *Dozier v. Heckler*, 754 F.2d 274 (8th Cir. 1985) (per curiam).

Claimant fails to substantiate the need for further information or an additional consultative examination. 20 C.F.R.§§ 404.1512(e) and 416.912(e) provide additional medical information will be sought when the available evidence is "inadequate" or when the report from a "medical source contains

a conflict or ambiguity."

State agency physician Lon Gottschalk, M.D. completed a Mental Residual Functional Capacity Assessment form on September 18, 2001. (AR 177-179.) Dr. Gottschalk found claimant not significantly limited in understanding and memory, sustained concentration and persistence, social interaction or adaption. (AR 177-178.) Dr. Gottschalk functionally assessed claimant as mentally able to carry out some moderately complex instructions, respond appropriately to supervision/co-workers and the public and adapt reasonably to change in work routine. (AR 179.) Dr. Gottschalk found that claimant's depression to be in reasonable partial remission. (AR 193.)

On April 30, 2001, state agency physician Susan Regan, M.D. completed a Psychiatric Review Technique form. (AR 346-350.) She assessed claimant with an affective disorder and anxiety related disorder. She assessed him with mild restricions of activities of daily living and in maintaining social functioning but with insufficient evidence to assess difficulties in maintaining concentration, persistence or pace or episodes of decompensation. (AR 356.)

Treating physician Dr. Wright managed claimant's depression solely with medication. (AR 324, 401.) Dr. Wright's functional assessment of claimant in June 2002 did not include any mental functional restrictions. (AR 382-386.)

The ALJ reviewed each of the treatment records, summarized the records and the doctor's opinions. The ALJ considered and relied upon the psychiatric evaluation and the review by the State agency physicians, as well as the statement by the treating physician. The Record is fully developed.

## CONCLUSION

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Bruce Gourley.

/////

1  These findings and recommendations are submitted to United States District Judge Oliver W.
2  Wanger pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304.  Within 10 days of the
3  date of service of these findings and recommendations, plaintiff may file written objections with the
4  Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local
5  Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and
6  Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
7  636(b)(1)( c).  Plaintiff is advised that failure to file objections within the specified time may waive the
8  right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
9  IT IS SO ORDERED.
10 **Dated:   May 22, 2006**                    /s/ Lawrence J. O'Neill
   b9ed48                                         UNITED STATES MAGISTRATE JUDGE